**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------- x

| | |
|---|---|
| MILTON CIPLET, Individually and on Behalf of Himself and All Others Similarly Situated, : : : Plaintiff, : : vs. : : JPMORGAN CHASE & CO. and J.P. : MORGAN SECURITIES INC, : : Defendants. : ---------------------------------------- : MARK SCHARFF, PINE SASH DOOR & : LUMBER CO., INC., MARK SCHARFF & : ASSOCIATES LLC, 2170 MILL AVENUE : LLC, 6202-6217 REALTY LLC, MARK : SCHARFF ITF MICHAEL SCHARFF, : MARK SCHARFF ITF DANIEL SCHARFF : And MARK SCHARFF ITF ARIEL : SCHARFF, Individually and On Behalf of All : Others Similarly Situated, : : Plaintiffs, : : vs. : : JPMORGAN CHASE BANK & CO., J.P. : MORGAN SECURITIES, INC. and CHASE : INVESTMENT SERVICES CORP., : : Defendants. : | Civil Action No. 08-CV-4580 (RMB)  <u>CLASS ACTION</u>   Civil Action No. 08-CV-5026 (RMB)  <u>CLASS ACTION</u> |

---------------------------------------- x

**DECLARATION OF CURTIS V. TRINKO IN OPPOSITION TO
COMPETING MOTIONS FOR APPOINTMENT OF LEAD PLAINTIFF
<u>AND APPROVAL OF SELECTION OF COUNSEL</u>**

    CURTIS V. TRINKO, ESQ. an attorney duly admitted to practice before this Court hereby declares pursuant to 28 U.S.C. § 1746, that the following is true and correct.

    1. I am the principal attorney of the Law Offices of Curtis V. Trinko, LLP, counsel for Plaintiff Milton Ciplet and submit this Declaration in support of Milton Ciplet, Mark Scharff, Pine Sash Door & Lumber Co., Inc., Mark Scharff & Associates LLC, 2170 Mill Avenue LLC, 6202-6217 Realty LLC, Mark Scharff ITF Michael Scharff, Mark Scharff ITF Daniel Scharff and Mark Scharff ITF Ariel Scharff's (collectively "ARS Investors Group") motion to consolidate all related securities class actions pursuant to Fed. R. Civ. P. 42(a), to be appointed as Lead Plaintiff in the consolidated action, and to have their counsel the Law Offices of Curtis V. Trinko, LLP ("Trinko") and the Law Offices of Marc E. Scollar ("Scollar") appointed as Co-Lead Counsel for the Class; and in opposition to the competing lead plaintiff and lead counsel motions made pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*

    2. A true and accurate copy of the Memorandum of Plaintiff Milton Ciplet in Opposition to Motion to Transfer for Coordination is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 28th day of August, 2008:

                      _____/s/ Curtis V. Trinko_____
                       Curtis V. Trinko

# EXHIBIT A

Case 1:08-cv-04580-RMB     Document 49-2     Filed 08/28/2008     Page 1 of 10

BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE: Auction Rate Securities (ARS)     |     MDL DOCKET NO. 1979
Marketing Litigation                                |
                                                               |
                                                               |

## MEMORANDUM OF PLAINTIFF MILTON CIPLET IN OPPOSITION TO MOTION TO TRANSFER FOR COORDINATION

Under Rule 7.2(a) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation and 28 U.S.C. §1407, Plaintiff Milton Ciplet[1] submits this memorandum of law in opposition to Movants'[2] Motion to Transfer for Coordination.

---

[1] *See Milton Ciplet, et al. v. JP Morgan Chase & Co. and J.P. Morgan Securities, Inc.*, Case No. 08-cv-4580 (S.D.N.Y.) complaint, attached hereto as Exhibit A.

[2] The term "Movants" refers to the plaintiffs in the following thirteen auction rate securities cases (each of which are represented by Stueve Siegel Hanson LLP, Girard Gibbs LLP, and Seeger Weiss LLP) who filed a Motion to Transfer For Coordination on June 12, 2008: (1) *Chandler v. UBS AG, et al.*, Case No. 08-cv-02967 (S.D.N.Y.); (2) *Kraemer v. Deutsche Bank AG, et al.*, Case No. 08-cv-02788 (S.D.N.Y.); (3) *Burton v. Merrill Lynch Corp., et al.*, Case No. 08-cv-09037 (S.D.N.Y.); (4) *Waldman v. Wachovia Corp., et al.*, Case No. 08-cv-02913 (S.D.N.Y.); (5) *Humphrys v. TD Ameritrade Holding Corp., et al.*, Case No. 08-cv-02912 (S.D.N.Y.); (6) *Swanson v. Citigroup, Inc., et al.*, case No. 08-cv-03139 (S.D.N.Y.); (7) *Jamail v. Morgan Stanley, et al.*, Case No. 08-cv-03178 (S.D.N.Y.); (8) *Oughtred v. E*Trade Financial Corp.et al.*, Case No. 08-cv-03295 (S.D.N.Y.); (9) *Defer LP v. Raymond James Financial, Inc. et*

1

## INTRODUCTION

The federal statute, 28 U.S.C. § 1407, permits transfer and consolidation of related civil actions when three express conditions are met: First, the related civil actions must involve "one or more common questions of fact;" second, transferring and consolidating these actions must facilitate the "convenience of the parties and witnesses;" and third, the transfer must also "promote the just and efficient conduct of such actions." *Id.* The Movants fail to meet each of these requirements and therefore, their motion should be denied in all respects.

## ARGUMENT

### I. The Auction Rate Securities Cases Do Not Share Common Factual Allegations

For cases to be deemed appropriate for transfer to a specific district by the multidistrict litigation panel, there must be a large number of cases pending in different federal district courts that share among them common questions of fact that are numerous, complex, and heavily disputed. *See In re Georgeson S'holder Communications, Inc., Share Exch. Litig.*, 277 F. Supp. 2d 1372, 1372-73 (J.P.M.L. 2003). In addition, there must be common questions of fact between the cases being transferred, not merely common questions of law. *See In re EPA Pesticide Listing Confidentiality Litig.*, 434 F. Supp. 1235, 1236 (J.P.M.L. 1977) ("On the basis of the record before us, the predominant, and perhaps only, common aspect in these actions is a legal question of statutory interpretation, since these actions involve a common question of law and share few, if any, questions of fact, transfer under Section 1407 is inappropriate."). Moreover, the common questions of fact must predominate over the individualized questions of fact at issue

---

*al.*, Case No. 08-cv-03449 (S.D.N.Y.); (10) *Van Dyke v. Wells Fargo & Co., et al.*, Case No. 08-cv-01962 (N.D. Cal.); (11) *Vining v. Oppenheimer Holdings, Inc., et al.*, Case No. 08-cv-04435 (S.D.N.Y.); (12) *Brigham v. Royal Bank of Canada, et al.*, Case No. 08-cv-04431 (S.D.N.Y.); and (13) *Bondar v. Bank of America Corp. et al.*, Case No. 08-cv-02599 (N.D. Cal.).

in each of the actions. *See In re Asbestos Sch. Prod. Liab. Litig.*, 606 F. Supp. 713, 714 (J.P.M.L. 1985).

In *In re Pharmacy Ben. Plan Administrators Pricing Litigation*, 206 F.Supp.2d 1362 (J.P.M.L. 2002), the Panel denied the application for transfer and consolidation for the purposes of pretrial proceedings of multiple Employee Retirement Income Security Act of 1974 ("ERISA") class actions. Even though the general allegations present in each action was somewhat similar, the MDL Panel held that unique questions of fact predominated over common questions of fact. *Id.* Each plaintiff had sued a different defendant and there was no allegation that the defendants had conspired with each other to violate ERISA. *Id.*[3] Moreover, the MDL Panel found that although each plaintiff purported to represent a nationwide class, the possibility of conflicting class determinations was minimal because only one separate defendant was involved in each action. *Id.*

For similar reasons, the actions here at bar should not be transferred for purposes of pre-trial coordination. Here, the factual allegations in each action may have general similarities, but the individual questions of fact in each action outweigh any common questions of fact. In each action brought with regard to an auction rate security, plaintiffs generally allege that each defendant bank actively marketed various auction rate securities as being the nature of cash equivalents, and that they were highly liquid investment vehicles, while at the same time, these institutions manipulated the auction market for said securities to maintain the market's

---

[3] *See also In re Airline "Age of Employee" Employment Practices Litig.*, 483 F. Supp. 814, 816 (J.P.M.L. 1980) (The MDL Panel denied a motion to transfer the actions against eight defendant airlines. Even though the allegations of the different actions similarly alleged that the defendant airlines violated Age Discrimination in Employment Act, the Panel denied transfer because "no more than one airline is a party to each action; that no airline is a party to more than two actions; that no industry-wide contract is involved; and that each airline will have unique defenses arising out of its labor relations with its flight deck crew members and its own views as to what constitutes safe operating procedures.").

3

appearance of liquidity, and failed to inform the plaintiffs and other Class members of the true nature of auction rate securities and the market for them. Mov. Br. at 6. However, the facts as to how each individual defendant financial institution actually marketed their auction rate securities and how they manipulated the auction rate securities market differ from bank to bank. For example, unlike the allegations made in the other auction rate securities actions, Plaintiff Ciplet alleges that defendant JPMorgan used their website and other written materials to market their auction rate securities:

- During the Class Period, JPMorgan promoted its auction-rate securities as short-term fixed income investments. For example, on J.P. Morgan's website www.jpmorgan.com, under a section entitled "Short-term Fixed Income Investments," dated August 26, 2007, JPMorgan represented that "JPMorgan Chase Treasury Services offers a comprehensive and diverse range of Short-term Fixed Income Investments... *Ciplet* Complaint ¶ 37.

- J.P. Morgan promoted its short-term fixed income investments, which included auction rate securities as liquid investments. On JP Morgan's website www.jpmorgan.com under a section entitled "Liquidity & Investments," JP Morgan promoted its short-term fixed income investments..." *Id.* at ¶ 38.

- During the Class Period, on monthly statements sent to investors of auction rate securities, J.P. Morgan classified the "Account Type" of said auction rate securities as "CASH." *Id.* at ¶ 39.

Moreover, there are no allegations in any of these actions that the defendant banks somehow colluded with the other defendant banks to perpetrate their auction rate security scheme, or that the defendant banks engaged and acted in a concerted course of conduct designed to defraud investors with other defendant banks. What is alleged in all of the actions involving auction rate securities is that each defendant bank individually devised and orchestrated a scheme whereby investors in these securities were defrauded. The methods by which each defendant bank executed their scheme vary from defendant to defendant. Accordingly, while the

general facts may be similar, the specific facts regarding each defendant bank are significantly different and thereby, the discovery required for the prosecution of each defendant bank will vary substantially from the other defendants.

## II. Consolidating All Auction Rate Securities Actions Will Result In A Waste of Judicial Resources and Greater Inefficiency

"The objective of [28 U.S.C. § 1407] is to provide centralized management under court supervision of pretrial proceedings of multidistrict litigation to assure the 'just and efficient conduct' of such actions." H.R. rep. No. 90-1130 at 2, as reprinted in 1968 U.S.C.C.A.N. 1989, 1899-1900. *See also In re Food Lion, Inc.*, 73 F.3d 528, 531-532 (4th Cir. 1996) (stating that "[t]he multidistrict litigation statute was enacted as a means of conserving judicial resources in situations where multiple cases involving common questions of fact were filed in different judicial districts. The statute permits the transfer of the various cases...to a single judge for consolidated pretrial proceedings").

However, by consolidating the auction rate securities actions, the Court will expend substantially more resources and create greater inefficiency among counsel. A transfer undertaken by the MDL Panel is appropriate where the alleged violations of federal law arise out of virtually the same documents, where the various groups of plaintiffs would be seeking the same documentary evidence and would be deposing many of the same witnesses. *See In re Boise Cascade Securities Litigation*, 364 F.Supp. 459 (J.P.M.L.1973). In the litigation brought against JPMorgan Chase (*Ciplet, et al. v. JPMorgan Chase, et al.*, No. 08-cv-4580, and *Scharff, et al. v. JPMorgan Chase, et al.*, No. 08-cv-05026) the allegations are based on different documentary evidence and the testimony of different witnesses, as compared to the cases brought against the other defendant financial institutions. Each defendant bank is alleged to have made both oral and written representations to its plaintiffs and the other class members in the course of

5

marketing various auction rate securities. Since there is no allegation of collusive activity between and among the defendants, proof regarding these representations will be adduced from different documents and different testimony for each defendant bank.

Thus, if the actions were to be consolidated for pretrial purposes, the scope of discovery would be overwhelming, with most discovery being irrelevant to the facts at issue in the JPMorgan Chase Litigation. The burden of coordinating this discovery would greatly outweigh any perceived convenience arising from the consolidation of the actions. Since there is no allegation of collusive activity between the defendants, Plaintiff Ciplet has no need for the documents and testimony being developed in the other litigations. However, as a consolidated action, defendants in other actions would be required to serve Plaintiff Ciplet with this entirely irrelevant discovery. Therefore, consolidation pursuant to 28 U.S.C. § 1407 is wholly inappropriate in this situation.

### III. The Southern District of New York Will Be A Just and Efficient Venue For Litigating All Related Actions

As an alternative to transfer to the Southern District of New York, Movants suggest the transfer of the auction rate securities actions to Judge White of the Northern District of California, should the Panel find that the docket of the Southern District of New York is full. Mov. Br. at 17. Based on the reasons stated herein, this suggestion is entirely inappropriate and Movants' request should be denied in its entirety.

#### A. Plaintiff's choice of forum is entitled to great deference

Notwithstanding the Movants' own assertion that "the Southern District of New York appears to be the most convenient forum for the parties and witnesses to in the ARS litigation," the Movants urge the Panel to nullify Plaintiff Ciplet's choice of forum by a transfer to another district. Mov. Br. at 17.

6

"The burden of demonstrating the desirability of transfer lies with the moving party." *Schieffelin & Co. v. Jack Co. of Boca, Inc.*, 725 F. Supp. 1314, 1321 (S.D.N.Y. 1989)(*citing Factors Etc., Inc. v. Pros Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978)). The plaintiff's choice of forum is a "'paramount consideration' in any determination of a transfer request," and is ordinarily entitled to "great deference." *Thayer/Patricof Educ. Funding*, 196 F.Supp. 2d at 31. Unless the balance of factors weighs strongly for the transfer of forum, the plaintiff's choice of forum should remain undisturbed. *See Schieffelin & Co.*, 725 F. Supp. at 1322.

Here, Movants clearly fail to meet their burden because the factors overwhelmingly weigh in favor of maintaining the Southern District of New York as the forum. Defendant JPMorgan, as well as the vast majority of the other defendant financial institutions, maintain their headquarters in the Southern District of New York. *See* Mov. Br. at 14, fn. 16. Moreover, even the Movants concede that the parties and witnesses, the conduct of the auctions, and the direction of the marketing campaigns are all within the Southern District of New York. *Id. See also In re Air Crash Disaster Near Santa Cruz* Airport, 463 F. Supp. 158 (J.P.M.L. 1979)(case transferred to forum where documents and witnesses were located) and *In re Salomon Bros. Treasury Securities Litigation*, 796 F.Supp. 1537 (J.P.M.L. 1992). Accordingly, Plaintiff Ciplet's choice of forum should be honored and the motion to transfer should be denied.

### B. The vast majority of auction rate securities cases are filed in the Southern District of New York

It is apparent that these actions should stay in the Southern District of New York because the Southern District of New York has by far the greatest number of cases. *See In re Profiler Prods. Liab. Litig.*, 429 F. Supp. 2d 138 (J.P.M.L. 2006); *In re Sony BMG Audio Compact Disc Litig.*, 429 F. Supp. 2d 1378 (J.P.M.L. 2006); *In re republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1407 (J.P.M.L. 1974) (transferring actions to the court in which thirteen of the

7

eighteen actions involved in the litigation were already pending). Here, according to the Movants' Motion to Transfer for Coordination, of the thirty-one (31) related actions, twenty-five (25) are pending in the Southern District of New York.[4] Mov. Br. at 3-4. Due to the overwhelming number of actions within the Southern District of New York, the actions should not be transferred to an alternative forum.

In addition, the Movants appear to suggest that a coordinated structure is necessary to effectively prosecute the actions brought against the various financial institutions. Plaintiff Ciplet does not need any cumbersome structure to effectively prosecute his claims against JPMorgan Chase & Co. and J.P. Morgan Securities, Inc. He has no interest in pursuing any claims against any other institutions. The Movants' suggestion brings no benefits to Plaintiff Ciplet, and probably has no demonstrable benefit for any other plaintiff as well. The only perceived beneficiary of such a structure would be the legal counsel representing the Movants. Thus, Plaintiff Ciplet vigorously opposes this organizational structure since it would greatly inhibit his ability to pursue his claims with his chosen counsel.

---

[4] Not included in the Movants' list is *Scharff, et al v. JPMorgan Chase Bank & Co. et al.,* Case No. 08-cv-03177 (S.D.N.Y.), filed by Plaintiffs Mark Scharff, Pine Sash Door & Lumber Co., Inc. Mark Scharff & Associates, LLC, 2170 Mill Avenue LLC, 6202-6217 Realty LLC, Mark Scharff ITF Daniel Scharf, and Mark Scharff ITF Ariel Scharf. The *Scharff* Plaintiffs have yet to be served with notice of the Movants' Motion to Transfer for Coordination, however, the *Scharff* Plaintiffs join in Plaintiff Ciplet's Opposition to Movants' Motion to Transfer for Coordination.

## CONCLUSION

For the reasons set forth above, this Panel should deny the Movants' Motion to Transfer For Coordination in all respects.

DATED:      July 15, 2008

**LAW OFFICES OF CURTIS V. TRINKO, LLP**

_____
Curtis V. Trinko (CT 1838)
Wai K. Chan (WC 0743)
16 West 46th Street, 7th Floor
New York, NY 10036
Tel: (212) 490-9550
Fax: (212) 986-0158
email:  ctrinko@trinko.com
            kchan@trinko.com

**ATTORNEYS   FOR   PLAINTIFF   MILTON CIPLET**
